T.C. Summary Opinion 2004-1


UNITED STATES TAX COURT


LAWRENCE K. MUDD, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10230-01S.          Filed January 8, 2004.


Lawrence K. Mudd, pro se.

Jillena A. Warner, for respondent.


GOLDBERG, Special Trial Judge: This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed. The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority. Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

For taxable years 1995 and 1996, respondent determined deficiencies in petitioner's Federal income taxes of $11,933 and $26,947, additions to tax under section 6651(a)(1) of $2,927.50 and $5,347.57, and additions to tax under section 6654(a) of $637.90 and $1,246.20.

After concessions by both parties, the issues remaining for decision are: (1) Whether petitioner received a distribution of $34,107 from The First National Bank of Ogden in 1995; (2) whether petitioner is entitled to a dependency exemption deduction for his daughter Amy Mudd in 1996; and (3) whether petitioner is entitled to a charitable contribution deduction in 1996.[1]

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Fort Mitchell, Kentucky, on the date the petition was filed in this case.

---

[1]In his petition, petitioner states that "penalties and interest are overstated based on actual taxable income." At trial, petitioner did not make any further arguments or present any evidence concerning the additions to tax for failure to file a timely return under sec. 6651(a)(1), and for failure to make estimated tax payments under sec. 6654(a). We conclude that petitioner disputes only the underlying tax deficiencies, not the applicability of the additions to tax. The correct amounts of these additions to tax, therefore, will be calculated by the parties in the Rule 155 computations required in this case.

During 1995 and 1996, petitioner was married to Barbara J. Mudd (Mrs. Mudd). Mrs. Mudd filed a Federal income tax return in each of the years, on which she claimed itemized deductions. Petitioner did not file a Federal income tax return for either of the years. Respondent issued petitioner a separate notice of deficiency for each year which determined deficiencies using items reported on third-party information returns. Respondent determined that petitioner's filing status was married filing separately in each of the years.

A taxpayer generally bears the burden of proving the Commissioner's determinations in a notice of deficiency to be in error. Rule 142(a). While section 7491(a) shifts the burden of proof to the Commissioner where the taxpayer presents credible evidence with respect to a factual issue, the burden remains on the taxpayer where the taxpayer failed to comply with all statutory substantiation requirements. Under certain circumstances, section 6201(d) may place the burden of production on the Commissioner with respect to disputes over items of income shown on information returns.

The first issue for decision is whether petitioner received a distribution of $34,107 from The First National Bank of Ogden (First National) in Ogden, Illinois, in 1995.

At some time in or prior to December 1993, petitioner established a self-directed IRA account at First National. In

December 1993, petitioner authorized First National to transmit $32,500 to a bank in Cincinnati, Ohio, so that a debenture could be purchased to be held in the IRA account. Petitioner informed First National that the investment would yield semiannual interest payments. First National transmitted the funds according to petitioner's request. First National then sent petitioner a letter instructing petitioner to have the debenture issued to "First National Bank of Ogden F/B/O Lawrence K. Mudd Trust #65", and to have the debenture forwarded to First National. First National never received the debenture and never received any interest payment therefrom.

Throughout 1994, First National sent several letters addressed to petitioner requesting information about the debenture and informing him that the bank had never received the debenture or any interest payment. In January 1995, First National sent a letter to petitioner informing him that the bank would be resigning as the custodian of petitioner's IRA account. In February 1995, First National mailed petitioner a check in the amount of $1,582.58, representing the balance remaining in petitioner's IRA account, less certain fees. In December 1995, after petitioner had failed to cash this check, First National put a stop payment on the check and mailed in its place a cashier's check in the amount of $1,562.58, reflecting an assessed fee of $20. In 2001, after the cashier's check still

had not been cashed, First National remitted the amount of the cashier's check to the State of Illinois Unclaimed Property Division.

Three of the letters that First National sent to petitioner, detailed above, were mailed to petitioner by certified mail with a return receipt. One of these receipts was signed by petitioner's son, and two (including the receipt for the letter with the $1,582.58 check) were signed by Mrs. Mudd. Petitioner never received either of the checks that First National mailed to him.

For the year 1995, First National issued petitioner a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. This form reflected a distribution to petitioner of $34,107.58. The distribution amount included the $32,500 which First National had previously transferred at petitioner's request, as well as the $1,582.58 check which First National mailed to petitioner upon closing his account.[2]

As a general rule, amounts paid or distributed out of individual retirement plans, including IRAs, are included in gross income when received by the payee or distributee under the

---

[2]The source of the $25 discrepancy between the sum of these two amounts and the amount reported on the Form 1099 is not clear from the record.

provisions of section 72.  Sec. 408(d)(1).  The regulations
provide in relevant part as follows:

> Except as otherwise provided in this section, any amount
> actually paid or distributed or deemed paid or distributed
> from an individual retirement account or individual
> retirement annuity shall be included in the gross income of
> the payee or distributee for the taxable year in which the
> payment or distribution is received.

Sec. 1.408-4(a)(1), Income Tax Regs.  There are no exceptions
applicable to the case at hand.

Under certain circumstances, a cash basis taxpayer who does
not actually receive possession of income may nevertheless be
considered to have constructively received that income.  Sec.
451(a); sec. 1.451-2, Income Tax Regs.  The relevant regulations
provide that:

> Income although not actually reduced to a taxpayer's
> possession is constructively received by him in the taxable
> year during which it is credited to his account, set apart
> for him, or otherwise made available so that he may draw
> upon it at any time, or so that he could have drawn upon it
> during the taxable year if notice of intention to withdraw
> had been given. * * *

Sec. 1.451-2(a), Income Tax Regs.  For income to be
constructively received, the taxpayer must have control over its
disposition, and the income must not be subject to substantial
limitations or restrictions.  Id.; Single v. Commissioner, T.C.
Memo. 1988-549.

We first address the $32,500 which petitioner authorized
First National to transfer to the Cincinnati bank in 1993.
Respondent argues that this amount is includable in petitioner's

income in 1995, the year in which First National issued the Form 1099. Petitioner argues that the amount is includable in income in 1993, a taxable year that is not before this Court.

It is clear that petitioner ultimately received the $32,500 which was intended to be used for the purchase of the debenture. Respondent has provided no evidence of when petitioner received this money, relying solely on the Form 1099 issued by First National. Petitioner, on the other hand, testified that the debenture for his IRA was never purchased, and that he personally retained the $32,500 which was taken from his IRA account in 1993. This testimony is supported by corroborating evidence showing that First National never acquired the debenture. Nor did First National receive the anticipated interest payments, which indicates that the debenture had never been issued in its name. We accordingly find that the $32,500 was, in fact, distributed from the IRA and received by petitioner in 1993. Because the $32,500 is included in petitioner's income when it was received in 1993, it is not included in income in 1995 as determined by respondent. Sec. 408(d)(1).

We next address the $1,582.58 check mailed by First National when it closed petitioner's account in 1995. We have found that petitioner never received either of the checks that First National mailed to him in 1995. This finding is based upon the fact that the return receipts--including the receipt for the

initial check--were not signed by petitioner, as well as petitioner's credible testimony that he and his wife were "having some problems" at that time, and that if she had given petitioner either of the checks, he would have cashed it.  We further find that petitioner was not in constructive receipt of the income. Because the checks were never delivered to petitioner, he was deprived of the control over their disposition that would have been necessary for constructive receipt.  Single v. Commissioner, supra (taxpayer did not constructively receive income in the form of State tax refund where the taxpayer's spouse withheld the refund check until after the taxable year); sec. 1.451-2(a), Income Tax Regs.

Because petitioner neither actually nor constructively received the IRA distribution during 1995, the $1,582.58 is not includable in petitioner's income in that year.  Single v. Commissioner, supra; sec. 408(d)(1); sec. 1.408-4(a)(1), Income Tax Regs.

The second issue for decision is whether petitioner is entitled to a dependency exemption deduction for his daughter Amy Mudd in 1996.  Although the notice of deficiency did not allow petitioner any dependency exemption deductions, respondent has conceded that petitioner is entitled to two such deductions for 1996, one for Robert Mudd and one for Mara Mudd.  Petitioner argues that he is entitled to a third exemption deduction for

Amy.  Amy was a full-time student at the University of Kentucky during 1996, and during that year she turned 20 or 21 years old.

Petitioner and respondent have framed this issue to be whether Amy claimed a personal exemption deduction on her own income tax return for 1996.  However, this fact is irrelevant in ascertaining petitioner's entitlement to the deduction.  Section 151 sets forth the requirements for a dependency exemption deduction.  A taxpayer generally is entitled to the deduction for a dependent who is a child of the taxpayer, who is under 24 years old, and who is a full-time student at a certain type of educational organization.  Sec. 151(a), (c)(1)(B)(ii), (c)(4)(A).  A child of a taxpayer is a dependent of the taxpayer if the taxpayer provides over half of the child's support.  Sec. 152(a)(1).  The dependency exemption deduction is not contingent upon the dependent's nonentitlement to a personal exemption deduction on her own return.  Sec. 151.[3]  We therefore hold that petitioner is entitled to the dependency exemption deduction for Amy in 1996.

---

[3]There does exist a converse restriction, inapplicable to the case at hand, which provides that an individual is not entitled to a personal exemption deduction where a dependency exemption deduction with respect that individual is allowable to another taxpayer.  Sec. 151(d)(2).

The third issue for decision is whether petitioner is entitled to a charitable contribution deduction in 1996.[4] A deduction generally is allowed for any charitable contribution made within the taxable year. Sec. 170(a)(1).

A taxpayer generally must keep records sufficient to establish the amounts of the items required to be shown on his Federal income tax return. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. In the event that a taxpayer establishes that a deductible expense has been paid but is unable to substantiate the precise amount, we generally may estimate the amount of the deductible expense bearing heavily against the taxpayer whose inexactitude in substantiating the amount of the expense is of his own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). We cannot estimate a deductible expense, however, unless the taxpayer presents evidence sufficient to provide some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

Deductions for charitable contributions are subject to further substantiation requirements. Sec. 170(a)(1). Generally,

---

[4]While the notices of deficiency determine that petitioner is entitled to the standard deduction in each year, the parties have stipulated that during the years in issue petitioner's spouse filed a separate income tax return with itemized deductions, thereby causing the standard deduction to be zero for petitioner in both years, see sec. 63(c)(6)(A), and allowing petitioner to deduct any itemized deductions to which he may be entitled.

such deductions must be substantiated with reliable written records reflecting the name of the donee, the date of the contribution, and either the amount of any cash contribution or a description of any property contributed. Sec. 1.170A-13(a) and (b), Income Tax Regs. Deductions for contributions of $250 or more are disallowed in the absence of a contemporaneous written acknowledgment of the contribution by the donee. Sec. 170(f)(8); sec. 1.170A-13(f), Income Tax Regs.

Petitioner first argues that he is entitled to deduct $3,685.64 for contributions of property made to a religious children's home. Petitioner purchased a number of items which he then gave directly to the home. As substantiation for these contributions, petitioner provided a list with the various items along with the prices that he paid for them. No individual item cost more than $89.95. Petitioner also provided a letter from the charity acknowledging the receipt of "new gym shoes, sweaters, boots, and food supplies". The items on petitioner's list, primarily consisting of children's athletic shoes, correspond to this description.

At trial, respondent questioned petitioner concerning his lack of receipts for the individual items donated to the children's home, but he did not directly challenge the authenticity or accuracy of petitioner's list of items or the letter from the charity. We conclude that the list provided by

petitioner and the written acknowledgment from the donee meet the section 170 substantiation requirements, despite petitioner's failure to maintain the individual receipts. Sec. 1.170A-13, Income Tax Regs.

Petitioner next argues that he is entitled to deduct two amounts paid in connection with a religious organization's housing development project. First, he made a $50 cash donation to the organization. Petitioner provided a handwritten receipt from the charity acknowledging receipt of the $50. We find that this receipt is sufficient substantiation of the contribution. Id. Second, petitioner argues that he incurred mileage expenses for driving to the housing project and working there.[5] Petitioner did not provide substantiation of these expenses, other than his testimony that he drove "approximately 600 miles"--he did not provide a mileage log or even any corroboration that he participated in the program. We find that petitioner has not substantiated the mileage expenses. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.

We conclude that petitioner made deductible charitable contributions of $3,735.64 during 1996.

---

[5]Sec. 170(i) prescribes the standard mileage rate for purposes of computing the amount of a sec. 170(a) charitable contribution deduction.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

under Rule 155.